**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| AHMED M. NAMOURY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:04-cv-599 (WWE) |
| | : | |
| ALFRED P. TIBBETTS; TIBBETTS, | : | |
| KEATING & BUTLER, LLC; WINI B. MOLA; | : | |
| and WINI MOLA REALTORS, LLC, | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION ON**
**CROSS MOTIONS FOR SUMMARY JUDGMENT**

This action arises from the sale and reconveyance of real property by plaintiff

Ahmed M. Namoury to Nettie and Samuel Thomas, in which defendants Alfred Tibbetts

("Tibbetts") and Tibbetts, Keating & Butler, LLC ("TKB") served as Namoury's legal

counsel and defendants Wini B. Mola ("Mola") and Wini Mola Realtors, LLC ("Mola

Realtors") served as Namoury's real estate broker.  Namoury asserts claims against

defendants for breach of contract, breach of fiduciary duty and professional

malpractice.[1]  The Mola defendants have asserted counterclaims for common law

vexatious litigation; statutory malicious prosecution; slander; and slander per se.[2]  Now

pending before the Court are plaintiff's Motion for Summary Judgment (Doc. #78), the

Tibbetts defendants' Cross Motion for Summary Judgment (Doc. #80) and the Mola

defendants' Cross Motion for Summary Judgment (Doc #79).

---

[1]     The Court has previously dismissed plaintiff's claims of breach of the
covenant of good faith and fair dealing and violations of the Connecticut Unfair Trade
Practices Act, Conn. Gen. Stats. § 42-110a (Doc. #16).

[2]     Plaintiff and the Mola defendants have stipulated to the dismissal of the
slander counts of the Mola defendants' counterclaim (Doc. #88).

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332 and the Mola defendants' counterclaims pursuant to 28 U.S.C. § 1367.

## BACKGROUND

The parties have submitted briefs, a stipulation of facts and supporting exhibits, which reflect the following factual background.

Plaintiff Namoury is a citizen of New York. Prior to the sale of his property to the Thomases, plaintiff had bought and sold at least eight houses. Defendant Tibbetts is a Connecticut citizen and an attorney licensed to practice law in the state of Connecticut. Defendant Mola is a citizen of Connecticut and a licensed real estate broker.

On October 9, 2001, Namoury conveyed property in Stamford, Connecticut to Nettie and Samuel Thomas. The Tibbetts defendants represented Namoury as counsel in conjunction with the sale. The Mola defendants acted as Namoury's real estate broker pursuant to a written brokerage agreement. Namoury sold the property for $740,000, of which $724,000 was made payable by a note and purchase money mortgage by the Thomases to Namoury as mortgagee. The Mola defendants received a broker commission of $37,000 on the transaction.

The Tibbetts defendants did not request or obtain a credit report on the Thomases as purchasers or mortgagors prior to the transaction. Nor did the Tibbetts defendants conduct any search to determine whether there were any judgments or liens of record against the Thomases. At the time of the conveyance, there were record mortgages in favor of Citibank N.A. and Chase Manhattan Mortgage, which survived the conveyance to Namoury. With the written permission and consent of the Thomases, the mortgages were not satisfied but remained open after the closing on the

2

property.  Tibbetts, on behalf of Namoury, paid the mortgages from Citibank and Chase Manhattan in full and indemnified the Thomases as purchasers/mortgagors, their attorney, Nathaniel W. Shipp and the title company against any loss or damages resulting from any failure to complete certain tasks detailed in a letter from Tibbetts to Shipp dated October 9, 2001.

Plaintiff alleges that tax liens had been filed and were "of record" against Nettie Thomas for the tax periods ending December 31, 1991 through December 31, 1996. Tibbetts testified at his deposition that the principal on the tax liens, with interest computed through August 15, 2003, was $54,565.26.

Nettie Thomas died on January 18, 2002.  Because Samuel Thomas, the surviving joint tenant, was unable to make payment, the purchase money mortgage went into default after Nettie Thomas's death.  On July 29, 2002, Samuel Thomas reconveyed the property by quit claim deed to plaintiff.  Plaintiff claims that the reconveyance was subject to the existing purchase money mortgage by deed in lieu of foreclosure.  The Tibbetts defendants represented Namoury in connection to the reconveyance.

Legal fees in the amount of $547.40 were paid by plaintiff to the Tibbetts defendants in connection with the transactions.  Plaintiff paid the Mola defendants $405 in expenses for the transactions.

This lien was recorded on October 11, 1996.  Tibbetts has admitted in an affidavit that he was not aware of the existence of the tax lien against the Thomases until after Namoury took the property back from Samuel Thomas.  Plaintiff alleges that the Tibbetts defendants did not perform a title search prior to advising plaintiff to accept

a reconveyance of the property following Nettie Thomas's death. Tibbetts testified that plaintiff did not want to pay for a title search. Plaintiff did not obtain any title insurance in the form of a mortgagee policy prior to or at the closing of the transaction with the Thomases. Tibbetts did not advise plaintiff that he faced any risk of earlier-filed liens, judgments or other claims on the property that may have been superior to the purchase money mortgage because Tibbetts did not believe that any such risk existed.

Plaintiff did not obtain title insurance when the property was reconveyed by Samuel Thomas after the death of Nettie Thomas. Tibbetts argues that Namoury's actions in taking back the property via a quit claim deed in lieu of foreclosure acted to extinguish the purchase money mortgage. Plaintiff was informed by Stuart Ratner, an attorney, that the prior recorded federal tax lien filed against the purchaser would attach to the policy. Plaintiff further claims that Ratner told Tibbetts that a prior recorded federal tax lien would take precedence over a later-granted purchase money mortgage. At his deposition, Tibbetts agreed with Ratner's position.

Shipp, the Thomases' attorney, represented to Tibbetts that the Thomases were not obtaining title insurance. Tibbetts did not ask Shipp to supply him with any kind of insurance, credit search, lien search or any other documents related to any potential judgments, liens, bankruptcies or other encumbrances that would impair the purchase money mortgage. Tibbetts stated at his deposition that he did not believe that anything would impair or come ahead of the purchase money mortgage.

Following the death of Nettie Thomas, Tibbetts advised Namoury that he had two options with regard to Samuel Thomas's difficulty making payments on the mortgages – either to "foreclose on the property or take the property back from Sam." At his

4

deposition, Tibbetts stated that he was not aware how plaintiff could obtain better protection. At the time of the transaction, Tibbetts did not believe that anything out of the chain of title could attach to the property. Tibbetts did not believe that it was his duty to obtain a title search or title report for plaintiff. Tibbetts did not inform Namoury of any risk associated with the purchase money mortgage other than default. Tibbetts did not tell plaintiff the cost of obtaining a title insurance policy in connection with the transaction in which plaintiff accepted a quit claim deed from the Thomases.

The Tibbetts defendants allege that plaintiff was provided with the Thomases' financial statement, but that plaintiff failed to examine such statement in detail. The Tibbetts defendants also contend that plaintiff never discussed the financial statement with Tibbetts, including the fact that the Thomases were unable to find traditional financing. In addition, the Tibbetts defendants claim that plaintiff never discussed with Tibbetts that plaintiff had agreed to provide a purchase money mortgage nor did Tibbetts and plaintiff have any conversations regarding the structure of the transaction because Mola would structure the deal. Tibbetts claims that he was hired primarily to effect the transfer of title. Tibbetts agreed to prepare a valid and enforceable note in addition to a mortgage securing that note. Tibbetts claims that he advised plaintiff of his concern that plaintiff was transferring the property without paying off Namoury's then-existing mortgage on the property. Further, the Tibbetts defendants contend that plaintiff did not want to pay for a title search.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a

matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  <u>Bryant v. Maffucci</u>, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  <u>Am. Int'l Group, Inc. v. London Am. Int'l Corp.</u>, 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp.</u>, 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  <u>Liberty Lobby</u>, 477 U.S. at 249.

Plaintiff has moved for summary judgment on his claims against the Tibbetts defendants and on the Mola defendants' counterclaims; the Tibbetts defendants have cross moved for summary judgment on plaintiff's claims against them; the Mola defendants have cross moved for summary judgment on their second counterclaim for malicious, vexatious litigation, as well as plaintiff's claims against them.  The Court will address the Tibbetts and Mola defendants in seriatim.

## I.    The Tibbetts Defendants

### A.    Count I - Breach of Contract

Count I of plaintiff's complaint alleges that the Tibbetts defendants breached the

retention agreement by which plaintiff retained the Tibbetts defendants to serve as legal counsel. Plaintiff alleges that the Tibbetts defendants failed to provide the appropriate legal advice and services laid out by plaintiff's expert in violation of the implied contract between the parties.

The Tibbetts defendants first argue that Count I does not sound in contract, but rather negligence. As the Court ruled in its first Ruling on Defendants' Motion to Dismiss (Doc. #16), plaintiff has sufficiently alleged a contract claim in Count I and has distinguished its claim from one sounding in negligence.

To establish a claim for breach of contract, plaintiff must prove "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." Rosato v. Mascardo, 82 Conn. App. 396, 411 (2004). To demonstrate the existence of a contract under Connecticut law, plaintiff must show the meeting of the parties' minds. An implied contract is found where one party provides services that it expects to be paid for while the other party avails itself of such services. See Bershtein, Bershtein & Bershtein, P.C. v. Nemeth, 221 Conn. 236, 241-42 (1992); Freda v. Smith, 142 Conn. 126, 134 (1955). The court can find an implied contract even in the absence of mutual assent "if the parties, by their conduct, recognized the existence of contractual obligations." Rahmati v. Mehri, 188 Conn. 583, 587 (1982). Because the Tibbetts defendants provided legal services in connection with the sale of property and plaintiff paid the Tibbetts defendants for such services, the Court concludes that there was an implied contract between the parties related to the retention of TKB.

Plaintiff, however, fails to establish that the implied contract included the

obligation to search the title history to determine whether there were any liens, judgments or other encumbrances on the property. A reasonable jury could not conclude that the Tibbetts defendants breached any implied contract by failing to search the title history in light of the fact that plaintiff cannot point to any evidence creating a contractual obligation to do so. Therefore, summary judgment will be granted in favor of the Tibbetts defendants on count I.

### B.    Count III - Breach of Fiduciary Duty

Count III of plaintiff's complaint asserts a claim for the breach of the Tibbetts defendants' fiduciary duty owed to plaintiff. The attorney-client relationship imposes a fiduciary duty on the attorney. Matza v. Matza, 226 Conn. 166, 183-84 (1993). Because an attorney is in a superior position of knowledge, he can easily abuse the client's confidence in him. Cadle Co. v. D'Addario, 268 Conn. 441, 455 (2004). Not every instance of professional negligence in the attorney-client context, however, is a breach of that duty. Beverly Hill Co. v. Schatz & Schatz, 247 Conn. 48, 56 (1998). Although the Connecticut Supreme Court has "not expressly limited the application of these traditional principles of fiduciary duty to cases involving only fraud, self-dealing or conflict of interest, the cases in which [it has] invoked them have involved such deviations." Murphy v. Wakelee, 247 Conn. 396, 400 (1998). In addition, professional negligence does not necessarily give rise to a claim for breach of fiduciary duty as these causes of action have distinct elements. See Beverly Hills Concepts, 247 Conn. 48, 56-57 (1998).

The Supreme Court of Connecticut opinions in Wakelee and Beverly Hills Concepts are instructive. In each case, the Supreme Court found that there was no

breach of the fiduciary duty because there was no self-dealing on the part of the attorney-defendant.  The respective plaintiffs' arguments were premised on professional negligence, and the court distinguished between such professional negligence and the violation of the attorneys' fiduciary duty.

Like those cases, Namoury's complaint is one that the Tibbetts defendants committed professional negligence.  Yet, there are no allegations of any self-dealing, fraud or conflict of interest.  Plaintiff cites to no case, law or commentary to support his claim that there was a breach of the fiduciary duty in the instant case.  In light of this, a reasonable jury could not conclude that there was such breach.  Therefore, the Court will grant summary judgment in favor of the Tibbetts defendants on this count.

### C.      Count IV - Negligence, Legal Malpractice

Plaintiff has asserted a claim against the Tibbetts defendants for legal malpractice.  Plaintiff here must demonstrate "the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages."  Mayer v. Biafore, Florek & O'Neill, 245 Conn. 88, 92 (1998).  The parties do not dispute that there was an attorney-client relationship.

"An attorney is negligent in handling a case if he fails to exercise at least that degree of care, skill and diligence which is exercised by prudent practicing attorneys in his locality."  Fiaschetti v. Vannucci, 1994 Conn. Super. LEXIS 2357 (Conn. Super. Ct. Sept. 14, 1994).  The plaintiff must present expert testimony as to the standard of proper professional skill or care.  Dunham v. Dunham, 204 Conn. 303, 317 (1987).  The expert's testimony is meant to assist the jury in understanding the applicable standard of care and construing the facts in light of that standard of care.  See Davis v. Margolis,

215 Conn. 408, 416 (1990); <u>see also</u> <u>Weaver v. Apuzzo</u>, 2005 U.S. Dist. LEXIS 5303,

*5 (D. Conn. Mar. 30, 2005) ("A plaintiff alleging attorney malpractice must establish

through expert testimony that the attorney's conduct 'legally caused' his claimed

injury.").  The factfinder must evaluate the "requisite skill and knowledge [of the lawyer];

the degree and knowledge to be possessed and exercised; the effect of local

considerations and customs; and any special abilities possessed by the lawyer."  1

Mallen and Smith, Legal Malpractice (3d ed.) § 15.2.

  Rule 702 of the Federal Rules of Evidence allows the Court to utilize the

testimony of an expert in determining the standard of care in a legal malpractice case.

<u>See</u> <u>LNC Invs., Inc. v. First Fid. Bank, N.A.</u>, 2000 U.S. Dist. LEXIS 10271, *7-8

(S.D.N.Y. July 24, 2000); <u>see also</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141

(1999) (trial judge has gatekeeping responsibility to ensure that expert testimony is

relevant and reliable).  The testimony of the expert need not be based on statistical or

objective evidence.  Rather, rule 702 allows conclusions based on personal knowledge

or experience.  <u>See</u> <u>First Union Nat'l Bank v. Benham</u>, 423 F.3d 855, 861-63 (8th Cir.

2005).

  Plaintiff has proffered the testimony of Attorney Geoffrey Hecht to establish the

standard of care that should have been exercised by the Tibbetts defendants.  The

Tibbetts defendants challenge Attorney Hecht's testimony because he allegedly does

not have the requisite background in real estate law to be considered an expert on the

standard of care to be used in such situations.

  Attorney Hecht has practiced law for 37 years in and around New Haven and

Fairfield Counties, Connecticut.  He stated that he performs 30 to 40 real estate

closings per year. Based on his expert opinion, the standard of care required of an attorney mandates that a real attorney conduct a title search. Because Attorney Hecht has personal experience in real estate law, the Court will accept him as an expert and allow his testimony as relevant and reliable. Whether his statements support plaintiff's case is the province of the jury. Because plaintiff and the Tibbetts defendants have offered opposing expert testimony, the Court cannot grant summary judgment in either party's favor.

## II.   The Mola Defendants

### A.   Count VI - Breach of Contract

Count VI of plaintiff's complaint asserts a breach of contract claim against the Mola defendants. The Mola defendants now move for summary judgment on this count. Plaintiff has not filed any response to the Mola defendants' motion with regard to this count. Therefore, summary judgment will be granted in favor of the Mola defendants.

### B.   Count VIII - Breach of Fiduciary Duty

Count VIII alleges a breach of fiduciary duty on the part of the Mola defendants. For the same reasons that the Court granted summary judgment as to the Tibbetts defendants' motion on this allegation, the Court will grant summary judgment in favor of the Mola defendants. In short, plaintiff has failed to make any allegation or proffer any evidence that the Mola defendants engaged in fraud, self-dealing or had a conflict of interest in their relationship.

### C.    Count IX - Real Estate Broker Malpractice

Count IX is a charge that the Mola defendants committed professional malpractice.  They seek summary judgment on the grounds that plaintiff has failed to proffer any expert testimony that would establish the requisite standard of care in the real estate broker profession.  Plaintiff argues that real estate is not a learned profession in which an expert's testimony is necessary.

The Court disagrees with plaintiff.  Connecticut courts have held that "[i]f the determination of the standard of care requires knowledge that is beyond the experience of an ordinary fact finder, expert testimony will be required."  Santopietro v. City of New Haven, 239 Conn. 207, 226 (1996).  In Santopietro, the Connecticut Supreme Court ruled that to prove professional malpractice against softball umpires, the plaintiff had to offer the testimony of an expert.  Although plaintiff in the instant case contends that real estate is not a learned profession in line with law, medicine or dentistry, the standard of care required of a real estate broker must be established by expert testimony.  See Davis, 215 Conn. at 416.

Plaintiff's attempts to portray a real estate broker's standard of care as only requiring the presentation of a buyer "ready, willing and able" to purchase the property is belied by his argument that the Mola defendants had a duty to conduct a title search implicit within this retention.  Insofar as plaintiff alleges that the Mola defendants had a heightened duty of care, the standard of care could not be limited to the broker's obligation to find a ready, willing and able purchaser.  An expert witness is necessary for the factfinder to determine the appropriate standard of care.  Therefore, summary judgment is appropriate in favor of the Mola defendants.

**D.     Counterclaim - Vexatious Litigation
        and Malicious Vexatious Litigation**

The Mola defendants have asserted counterclaims for common law and statutory vexatious litigation and malicious litigation.  Plaintiff counters that an essential element of both claims is that the underlying litigation be resolved in the defendant's favor.

The Connecticut Supreme Court has held that a "claim for vexatious litigation requires a plaintiff to allege that the previous lawsuit was initiated maliciously, without probable cause, and terminated in the plaintiff's favor."  Blake v. Levy, 191 Conn. 257, 263 (1983).  As to the common law vexatious litigation, courts throughout Connecticut, this Court included, have repeatedly held that a vexatious litigation claim cannot be asserted as a counterclaim.  Rather, it must be brought in a second action so that plaintiff can establish that the litigation was resolved in the defendant's favor.  See WhitServe LLC v. Computer Packages, Inc., 2007 U.S. Dist. LEXIS 49928 (D. Conn. July 10, 2007); Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LP, 281 Conn. 84, 93-94 (2007).  The same holds true for a statutory malicious litigation claim under Conn. Gen. Stat. § 52-568.  See Verspyck v. Franco, 274 Conn. 105, 113 n.7 (2005); Paint Products Co. v. Minwax Co., 448 F. Supp. 656, 658 (D. Conn. 1978).

The Mola defendants contend that the underlying claims refer to the claims that have previously been dismissed by the Court as well as claims that may be dismissed pursuant to this Memorandum of Decision, a point which is not countered by plaintiff. The Mola defendants, however, point to no case providing an exception to the rule that would allow a vexatious litigation claim to be brought as a counterclaim following the granting of a partial motion to dismiss, nor has the Court been able to find one.  In light

13

of that, Connecticut law is clear that a claim for vexatious litigation may not be brought as a counterclaim.  See Kaltman-Glasel v. Dooley, 156 F. Supp. 2d 225 (D. Conn. 2001) (holding that vexatious litigation claim cannot be brought until underlying litigation has terminated); Equality, Inc. v. I-Link Communs. Inc., 76 F. Supp. 2d 227, 229 (D. Conn. 1999) ("[I]t is impossible to use vexatious litigation as a counterclaim in the very suit that the defendant claims is vexatious.").  If the Mola defendants' contention were true, then courts would likely reserve decision on such counterclaims until after it had resolved any outstanding motions to dismiss or for summary judgment, at which point there may be unfavorable decisions to support a vexatious litigation counterclaim. Because courts in previous cases dismiss such counterclaims at an early stage, this Court believes that Connecticut courts, to whom the Court looks when it sits in diversity, would not allow the Mola defendants' counterclaims to go forward.  See, e.g., Kaltman-Glasel, 156 F. Supp. 2d 225; Equality, Inc., 76 F. Supp. 2d 227.  Therefore, summary judgment will be granted in favor of plaintiff on these counterclaims.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiff Ahmed Namoury's motion for summary judgment (Doc. #78) only as to the Mola defendants' counterclaims; GRANTS defendants Alfred Tibbetts and Tibbetts, Keating & Butler's cross motion for summary judgment (Doc. #80) as to Counts I and III; and GRANTS defendants Wini B. Mola ("Mola") and Wini Mola Realtors, LLC's cross motion for summary judgment (Doc. #79) as to Counts VI, VIII and IX.  As to all other counts, the cross motions for summary judgment are DENIED.

Dated at Bridgeport, Connecticut, this 20th day of October, 2008.

_____/s/_____
Warren W. Eginton
Senior United States District Judge